**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

JAMES LEVERIDGE,

*Plaintiff,*

*v.*

CITY OF WOODSTOCK and GRANT MATTHEW SHAW, in his individual and official capacities;

*Defendants.*

CIVIL ACTION FILE NO. 1:25-cv-05553-WMR

## DEFENDANTS' MOTION TO DISMISS

The City of Woodstock and Officer Grant Shaw move to dismiss Plaintiff James Leveridge's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). Officer Shaw moves to dismiss the official capacity claims against him, and Woodstock moves to dismiss each of the claims against it. The Court should GRANT this motion.

## INTRODUCTION AND BACKGROUND

Leveridge was arrested pursuant to a warrant during the early morning hours of October 3, 2023. Doc. 1 ¶¶ 7, 12. Leveridge alleges that he was ordered to put his hands on top of his head, face away from the officers arresting him, and walk backwards. *Id.* ¶ 9. Leveridge contends that during his arrest,

Defendant Grant Shaw grabbed him from behind and slammed him to the ground, causing Leveridge injuries. *Id.* ¶ 10-11.

Leveridge's allegations against the City of Woodstock are all conclusory and fail to state a claim under federal pleading standards. He claims that Woodstock has a pattern of failing to properly train, supervise, and discipline its officers. *Id.* ¶ 16. He further claims that Woodstock has enacted policies that demonstrate deliberate indifference by encouraging officers to keep their body cameras off; allowing officers to use excessive force; failing to train its officers on take-down techniques; failing to require mandatory reporting of misconduct; and by not having adequate disciplinary processes. *Id.*

Leveridge only cites one other incident to allege that Woodstock has a widespread pattern of similar constitutional violations. That incident involved the same defendant, Officer Shaw, shooting a man during a traffic stop. *Id.* ¶ 26 (citing https://www.fox5atlanta.com/news/ex-woodstock-police-officer-gets-community-service-involuntary-manslaughter-plea). That shooting occurred on October 12, 2023, which was *after* the incident at issue in this suit. *Id.*; Exhibit A, Grant Shaw Indictment.[1] Thus, it cannot establish a pattern of violations. *Connick v. Thompson*, 563 U.S. 51, 63 n.7 (2011).

---

[1] The Court may consider the news article that Leveridge cited in his complaint pursuant to the incorporation by reference doctrine. Woodstock's alleged knowledge of its need to train, which Leveridge contends the shooting establishes, is central to Leveridge's claims. And defendants do not dispute the

In sum, Leveridge alleges that Defendant Shaw used excessive force when arresting him. Leveridge also states that Woodstock is liable because it had a policy or custom constituting deliberate indifference that caused this incident, but he alleges no facts to support that conclusion. Accordingly, the Court should DISMISS Leveridge's claims against the City of Woodstock for failure to state a claim upon which relief may be granted.

## STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiffs' complaint must contain sufficient factual material, accepted as true, such that it states a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires factual allegations specific enough "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although well-pleaded factual allegations are entitled to a presumption of truth, courts must nevertheless disregard legal conclusions, generic labels, and unadorned recitations of the elements of a cause of action. *See Iqbal*, 556 U.S. at 678-79.

---

authenticity of the document. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). Furthermore, the court may also take judicial notice of documents filed in state court litigation regarding the subsequent shooting at the motion to dismiss stage. Federal Rule of Evidence 201; *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015).

## ARGUMENT

### I. The official capacity claims against Defendant Shaw should be dismissed.

As a preliminary matter, all claims against Officer Shaw in his official capacity should be dismissed as redundant of Leveridge's claims against Woodstock. A suit against an officer in the officer's official capacity is simply another way of pleading a claim against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Because Leveridge has sued both Woodstock and Leveridge, the official-capacity claims against Officer Shaw should be dismissed as redundant. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (affirming dismissal after explaining, "there no longer exists a need to bring official-capacity actions against local government officials"); *Higdon v. Fulton County*, 746 F. App'x 796, 799 (11th Cir. 2018) ("Thus, official-capacity claims against municipal officers should be dismissed, as keeping the claims against both the municipality and the officers would be redundant."); *Kinlocke v. Benton*, 257 F. Supp. 3d 1368, 1377 (N.D. Ga. 2017).

### II. Leveridge's *Monell* claim against the City should be dismissed.

In *Monell v. N.Y. Dept. of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court held "that local government units could be liable under § 1983 for deprivations of federal rights," but at the same time the Court recognized an important "limitation on this liability[.]" *Pembaur v. City of Cincinnati*, 475

U.S. 469, 478 (1986). "[A] municipality cannot be made liable by application of the doctrine of respondeat superior." *Id.*; *see also Iqbal*, 556 U.S. at 676 ("vicarious liability is inapplicable to . . . § 1983 suits"). Thus, under *Monell*, a plaintiff must plead and prove the following elements: (1) that his or her constitutional rights were violated; (2) that the local government entity had a policy or custom that constituted deliberate indifference to the plaintiff's constitutional rights; and (3) that the policy or custom caused the constitutional violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). These "strict limitations on municipal liability under § 1983" ensure that liability is not "based on the doctrine of respondeat superior." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

Here, Leveridge has not plausibly alleged that Woodstock has a policy or custom demonstrating deliberate indifference to constitutional rights. Leveridge's allegations regarding Woodstock's liability are conclusory without any factual allegations to support them. *See Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, Leveridge has not plausibly alleged that Woodstock can be liable pursuant to *Monell*.

### A. Leveridge has not plausibly alleged the existence of an unconstitutional adopted policy.

Leveridge baldly asserts that Woodstock has implemented policies that provided Officer Shaw with "the opportunity and inclination to violate

Plaintiff's Constitutional rights." Doc. 1 ¶¶ 16, 34. Leveridge states that Woodstock has enacted policies, "either written or unwritten" encouraging officers to not activate their body cameras; allowing officers to use excessive force; failing to train on use of force and take down techniques; failing to require mandatory reporting of use of force. Leveridge further asserts that Woodstock has inadequate disciplinary policies. *Id.* ¶ 16. Leveridge, however, does not quote from a policy, attach a policy, or even identify the name of the policy he believes is at issue.

Under *Monell*, a "policy is a decision that is officially adopted by the municipality or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). For liability to arise, the policy itself must be facially unconstitutional; otherwise, liability would be premised on respondeat superior. *City of Canton v. Harris*, 489 U.S. 378, 386-87 (1989); *see Am. Fed'n of Lab. & Cong. Of Indus. Organizations v. City of Miami, Fl.*, 637 F.3d 1178, 1188 (11th Cir. 2011) (noting that, because "none of the policies [were] facially unconstitutional" the policy-based claim failed); *Sewell*, 117 F.3d at 489 ("Obviously, the Town has no policy commanding its officers to barter arrests for sexual favors."); *see also McDowell*, 392 F.3d at 1291 (noting dichotomy of analysis where "the plaintiff claims that a municipality's facially valid actions violated his constitutional rights").

Leveridge has not attached the actual policy or quoted what it says, and a plaintiff cannot survive Rule 12(b)(6) without providing the "specific written policy" for the court to review and consider. *D.P. v. School Bd. of Palm Beach Cnty.*, 658 F. Supp. 3d 1187, 1226 (S.D. Fla. 2023); *see Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1327 (S.D. Fla. 2018) (dismissing *Monell* claim when the complaint merely alleged that an official policy existed without actually identifying said policy). Leveridge here has merely alleged that Woodstock has enacted a policy that is unconstitutional. But by not attaching or quoting the policy, Leveridge's allegations are merely formulaic. *Iqbal*, 556 U.S. at 678 (holding that allegations that a supervisor knew of and condoned harsh conditions of confinement were a mere "formulaic recitation of the elements" and could not give rise to liability). Thus, Leveridge's conclusory allegations that do not even identify a specific policy do not "raise a right to relieve above the speculative level" and must be dismissed. *Twombly*, 550 U.S. at 555-56.

**B. Leveridge has not plausibly alleged the existence of a custom or practice demonstrating deliberate indifference.**

A municipality can also be liable under *Monell* for constitutional deprivations that are caused by an unofficial custom, "even though such a custom has not received formal approval through the body's official decision-making channels." 436 U.S. at 690. Such a custom can only establish liability

if "the municipality tacitly authorized these actions or displays deliberate indifference towards the police misconduct." *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994). To prove the existence of a custom a plaintiff typically must show "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). Random acts or isolated incidents, by definition, cannot amount to a custom. *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986). Rather, a plaintiff must show an adequate number of temporally proximate prior constitutional violations to establish a custom or practice that caused his damages. *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1133 (11th Cir. 2021); *Jackson v. City of Atlanta*, 2022 WL 4089823, at *15 (N.D. Ga. Aug. 18, 2022) (holding that plaintiff failed to plausibly allege a custom when she alleged nine prior instances over the previous 17 years, only two of which occurred in the eight most recent years).

Here, Leveridge alleges that Woodstock caused his damages by allowing the existence of a widespread pattern of similar constitutional violations. Doc. 1 ¶ 26. But again, Leveridge does not allege any prior constitutional violations that could show Woodstock was deliberately indifferent to a need to train its officers. Rather, Leveridge's allegations are again conclusory and mere recitations of the elements of a cause of action. Leveridge's allegations do not

plausibly allege a custom or practice that constituted deliberate indifference and caused his damages.

Leveridge does cite one incident besides this one—an incident in which Officer Shaw shot a man during a traffic stop. But that allegation cannot show that the City caused this incident because of its deliberate indifference to police conduct. First, that incident occurred after the incident at issue here, and subsequent incidents cannot establish a pattern for *Monell* purposes. *Connick*, 563 U.S. at 63 n.7 (2011). Second, assuming *arguendo* that the shooting occurred before the incident here, a single prior incident that was different in kind (take down versus shooting) is insufficient to state a widespread and persistent pattern and practice that could give rise to *Monell* liability. *See Jackson*, 2022 WL 4089823, at *16 (Aug. 18, 2022).

In sum, Leveridge has not identified a policy that is unconstitutional on its face, and he has not alleged prior similar constitutional violations that could establish Woodstock's deliberate indifference toward police misconduct.

### C. Leveridge has not plausibly alleged that it was obvious that Woodstock needed to train its officers.

Leveridge alleges that Woodstock needed to train its police because failing to do so would obviously cause constitutional violation to members of the public. Doc. 1 ¶ 27.

In *City of Canton*, the Supreme Court, in dictum, left open the possibility that in a "narrow range" of cases, a pattern of constitutional violations is not necessary to establish liability for a *Monell* failure to train claim." *Canton*, 489 U.S. at 390 n.10. There, the Court stated that prior instances of constitutional violations likely would not be necessary if, for example, a city armed its police officers and gave no training on the constitutional limits of deadly force.

Deadly force is not at issue in this case. In fact, neither is use of any weapon. Rather, Officer Shaw took Leveridge to the ground to arrest him. Doc. 1 ¶ 10. Leveridge concedes in his complaint that the officers were there to arrest him late at night and pursuant to a warrant. During that arrest, Officer Shaw took Leveridge to the ground. *Id.* ¶¶ 7, 10. The narrow issue of how to and when to take an arrestee to the ground to effect an arrest is worlds away from passing out firearms to police officers and providing no training.

Moreover, the exception in *Canton* almost never applies. *Gold*, 151 F.3d at 1352 (failure to train on handcuff complaints insufficient); *Keith v. DeKalb Cnty. Ga.*, 749 F.3d 1034, 1053 (11th Cir. 2004); *Vielma v. Gruler*, 808 F. App'x 872, 883 (11th Cir. 2020) (failure to train on active shooter situations insufficient). Further, since *Canton*, the Supreme Court has never actually held that the need for training was so obvious that a *Monell* claim was viable. *Denham v. Corizon, Inc.*, 675 F. App'x 935, 942 (11th Cir. 2017). Thus, all Leveridge can rely on is a non-analogous hypothetical.

Finally, Leveridge's sole allegation that it was obvious Woodstock needed to train fails to state a claim because—like his policy and custom allegations—is merely consistent with liability and does not include plausibly factual allegations. *See Iqbal*, 556 U.S. at 678 (Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitled to relief.") (internal quotations omitted). Leveridge has not alleged facts that could show an entitlement to relief, and his *Monell* claim against Woodstock should be dismissed.

## III. Leveridge's attorney fees and punitive damages claims against Woodstock must be dismissed.

Claims for attorney's fees, whether pursuant to O.C.G.A. § 13-6-11 or 42 U.S.C. § 1988 are derivative claims that necessarily fail when all substantive claims are dismissed. *Ludwig v. Poetter*, 2021 WL 12299076, at *9 n.15 (N.D. Ga. Sept. 23, 2021); *Wanna v. Navicent Health, Inc.*, 357 Ga. App. 140 156-57 (2020). Likewise, a claim for punitive damages is derivative and cannot stand alone. *Popham v. Landmark Am. Ins. Co.*, 340 Ga. App. 603, 612 (2017). Here because Leveridge's sole substantive claim against Woodstock is due to be dismissed, his derivative attorney's fees and punitive damages claim likewise should be dismissed.

Moreover, punitive damages otherwise are not recoverable against a municipality. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)

(holding municipalities are immune from punitive damages under 42 U.S.C. § 1983); *Metro. Atlanta Rapid Transit Auth. v. Boswell*, 261 Ga. 427, 427 (1991) (holding local government entity cannot be held liable for punitive damages because such award would violate public policy). Leveridge's punitive damages claim against Woodstock therefore is due to be dismissed for multiple reasons.

## CONCLUSION

The Court should GRANT this motion and dismiss each of Leveridges' claims against the City of Woodstock as well as the official capacity claims against Officer Shaw with prejudice.

## LOCAL RULE 7.1D CERTIFICATE

This submission was prepared using Century Schoolbook 13-point font.

**HALL BOOTH SMITH, PC**

*/s/M. Blake Walker*
RUSSELL A. BRITT
Georgia Bar No. 473664
M. BLAKE WALKER
Georgia Bar No. 993236
*Attorneys for Defendants*

191 Peachtree Street, NE,
Suite 2900
Atlanta, Georgia 30303
(404) 954-5000
rbritt@hallboothsmith.com
bwalker@hallboothsmith.com

## CERTIFICATE OF SERVICE

I certify that I have served this document by filing it with the Court's Electronic Case Filing system.

*/s/ M. Blake Walker*
Mitchell Blake Walker
Ga. Bar No. 99326